IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER J. WOOTEN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 04-138 Erie |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## OPINION

COHILL, D.J.

Christopher Wooten ("Claimant") here appeals the Commissioner's denial of his claim for disability benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§401-433, 1381-1383f. Specifically, Wooten appeals the determination that he is not disabled. Before the Court are cross-motions for summary judgment filed by the parties to this appeal pursuant to Fed. R. Civ. P. 56. We have jurisdiction under 42 U.S.C. § 405(g).

Having considered the arguments of the parties, the administrative record, and the applicable law, for the reasons set forth below we will grant summary judgment in favor of the Claimant and against the Commissioner, and reverse and remand for further proceedings.

### I. Background

**Procedural Background**

Christopher Wooten filed an application for DIB and SSI benefits on November 20, 2002, alleging disability since May 1, 2002. (R. 69-71; 190-91). Claimant alleged that he was unable to sustain substantial gainful activity due to a mental impairment. These claims were denied on March 27, 2003, because there was insufficient medical evidence to assess his condition. (R. 55-58).

Wooten's claims were heard by Administrative Law Judge ("ALJ") Edward J. Banas on

December 5, 2003. Claimant was represented by counsel and testified at the hearing. By decision dated December 22, 2003, Wooten's claims were denied. (R. 14-22). The Appeals Council declined to review the ALJ's decision, and this civil action followed. (R. 7-10).

**Medical History**

Briefly, Claimant's medical history shows that he was hospitalized at University of Pittsburgh Medical Center Northwest ("UPMC Northwest") from April 9, 2002 through April 12, 2002, for depression with suicidal ideation. (R. 122). He had previously been treated for alcohol and drug abuse. (R. 123, 125). The admitting psychiatrist, William Goodpastor, M.D., assigned a global assessment of functioning (GAF) of 20-25. (R. 127). Wooten was discharged with diagnoses of depression, possibly major and recurrent depression, with possible psychosis. (R. 123). He insisted on being discharged, although Dr. Goodpastor thought he should stay another day or so. His GAF had increased to a range of 35-40 by discharge. (R. 126). He was directed to obtain outpatient treatment, and given prescriptions for Zoloft and Seroquel, an anti-psychotic medication. (R. 126). Claimant failed to sustain follow-up psychiatric treatment.

After he filed for benefits in November 2002, a consultative mental examination was scheduled for March 2003. However, the Claimant failed to appear for the examination despite mail and telephone reminders. (R. 114-17). Indeed, the initial decision to deny benefits was based only on his treatment at UPMC Northwest, and that decision noted that there was insufficient medical evidence with which to assess his current condition. (R. 55).

Wooten next sought treatment in June 2003, when he presented himself to UPMC Behavioral Health in Meadville, Pennsylvania. There, he indicated that he had received one or two outpatient counseling sessions after being discharged in 2002, but had then abandoned treatment. He stated that the Seroquel was helpful, but that he stopped taking it when he ran out of medication. He was incarcerated for several months in 2002 for failure to pay child support. He described having held three to four dozen jobs since the age of 17, the longest period of employment being at a Perkins restaurant for nine months. (R. 159).

The Claimant reported that his depression was worse than before, and that he either took things out on others or engaged in self-destructive behavior such as cutting, burning, strangulating, and punching himself in the face, punching metal doors, and kicking things. (R. 161). He had social contacts with his cousin, his sister, and his girlfriend. (R. 162).

A mental status assessment diagnosed him with depression and put his GAF at 52. (R. 165). He was scheduled for a psychiatric evaluation with Tariq Qureshi, M.D. on June 16, 2003. During that evaluation, Wooten reported having occasional auditory hallucinations, as well as being paranoid and depressed and unable to hold a job. He also indicated that he had been physically and mentally abused by his father for many years. (R. 166). Dr. Qureshi diagnosed the Claimant with major depressive disorder, recurrent and severe with psychotic features, as well as borderline personality disorder. His GAF was assessed at 55. (R. 167). Wooten's recent and remote memory were good, but his insight and judgment were limited. (R. 167). Dr. Qureshi prescribed Seroquel and individual psychotherapy. (R. 167).

Between July and November 2003, Wooten attended bi-weekly psychotherapy sessions. (R. 174-187). He also took psychotropic medications, and treatment progress notes from Wooten's therapy sessions show that he improved somewhat on medication but continued to have problems with anger impulse and auditory hallucinations. Notes from the session on July 29, 2003, show that he had improved since the initial assessment six weeks earlier. His temper was better, and his auditory hallucinations were just a whisper. The therapist noted that his mood was improved, his affect was appropriate, and his motivation level was good. (R. 184-185). At his next session, on August 12, 2003, he was feeling less depressed. His mood was dysphoric, his affect appropriate, and his motivation level was verbal but not spontaneous. (Tr. 182-83). On September 15 he was "still angry – just not same frequency – but intensity remains same." His mood was again dysphoric, his affect appropriate, and his motivation level fair.

On October 3, 2003, Wooten's psychotherapist noted that not much had changed since the last session, and that the Claimant was "doing well." Hallucinations were still present, but his

3

temper was improved. His motivation level was good. (R. 178-79). Treatment notes from October 13 show "overall improvement." Wooten was doing yoga and deep breathing exercises to calm himself down. (R. 176-77). When he was seen on November 24, the Claimant was "getting ready for the holidays" and looking for a new place to live with his girlfriend. He reported that his anger was under better control. His mood was assessed as dysthemic, his affect drowsy, and his motivation level fair. (R. 174-75).

Dr. Qureshi monitored the Claimant's medications throughout this period, and they were frequently changed and adjusted. Dr. Qureshi evaluated his medications on October 16, 2003, and noted that the Claimant's auditory hallucinations were more intense, his affect was blunted, he reported sleeping poorly and having a poor appetite, his ability to concentrate was poor. There was no change in Dr. Qureshi's original diagnosis. (R. 169).

By letter dated November 18, 2003, Dr. Qureshi summarized Claimant's treatment history, and indicated that Wooten was unable to hold any type of gainful employment due to severe psychosis and depression. (R. 173). He stated that "[t]he patient still admits to auditory hallucinations, paranoid ideations, and delusions of persecution." (R. 173).

**Hearing Testimony**

Wooten was twenty-four years old at the time of the hearing. He has a high school equivalency degree. Although he was not employed at that time, he has past relevant work experience as a telemarketer, laborer, roofer, and prep cook. (R. 18).

Wooten testified to a history of auditory hallucinations, as well as to problems with anger and impulse control. When asked why he could not stick to a job, he explained that he would get upset and frustrated. He heard voices whispering to him, and he often threw things. (R. 39). When he worked as a telemarketer, the Claimant was paranoid and thought the other employees were staring at him. (R. 42). He testified that his current medications, Neurontin and Seroquel, helped with his temper and with the voices. (R. 43).

The ALJ concluded that Wooten was severely impaired within the meaning of the

Regulations. (R. 21 finding 3). The ALJ found Claimant's testimony regarding his medical limitations to be not entirely credible. (R. 21 finding 5). He concluded that Wooten was capable of performing work at all exertional levels, but was limited to low-stress work having no contact with the general public. (R. 21 finding 7). The ALJ further determined that the Claimant has no exertional limitations. (R. 21 finding 14). He cannot perform any of his past relevant work. (R. 21 finding 8).

A vocational expert testified that considering the Claimant's age, educational background, work experience, and residual functional capacity, he was capable of adjusting to work as a janitor/cleaner or laundry worker. (R. 20). The vocational expert also stated that, if she assumed the Claimant's own testimony about his problems with anger and impulse control and auditory hallucinations was credible, he would not be able to do any kind of substantial gainful activity. (Tr. 48).

## II. Standard of Review

The standard of review used by this Court in reviewing the decision of the Commissioner in social security cases is whether substantial evidence exists in the record to support the decision. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989). Judicial scope of review of a social security case is based upon the pleadings and transcript of the record. 42 U.S.C. § 405(g). We review the Commissioner's decision only to determine whether she applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. *Schaudeck v. Commissioner of Social Sec. Admn.*, 181 F.3d 429, 431 (3d Cir. 1999). The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999); *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).

"Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*,

5

487 U.S. 552 (1988)). Substantial evidence has been defined as more than a mere scintilla. *Plumer*, 186 F.3d at 427; *Hess v. Secretary*, 497 F.2d 837, 838 (3d Cir. 1974). Evidence is not substantial if the Commissioner fails to resolve conflicts created by countervailing evidence, particularly that of treating physicians, or if it is not evidence but mere conclusion. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The Commissioner may accept or reject testimony or other evidence, but is not free to mischaracterize the evidence or to reject it for no reason or for the wrong reason. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993).

To be eligible for social security disability benefits, a plaintiff must demonstrate an inability to engage in substantial gainful activity because of a medically-determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986).

To facilitate the disability determination, the Commissioner has set forth a five-step sequential analysis for an ALJ to use when evaluating the disabled status of a claimant. 20 C.F.R. § 404.1520(a); *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). The ALJ must determine (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent the performance of past relevant work; and (5) if the claimant is incapable of performing past relevant work, whether he can perform any other work that exists in the national economy, in light of his age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520.

The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment. *Dobrowolsky*, 606 F.2d at 406. Once this burden is met, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity. *Id.*

### III. Analysis

Applying this five-part framework to the Claimant's case, the ALJ found that the Claimant has not engaged in substantial gainful activity during the relevant period. (R. 21, finding 2). He has a severe impairment or impairments that do not meet or medically equal one of the listed impairments. (R. 21, findings 3, 4). He is unable to perform any of his past relevant work. (R. 21, finding 8). However, he is able to make a vocational adjustment to work such as janitor/cleaner or laundry worker. (R. 21, finding 12).

On appeal, the Claimant argues that the ALJ's decision is not based on substantial evidence because he failed to give proper weight to the opinion of Dr. Qureshi, Wooten's treating psychiatrist, who concluded that the Claimant could not hold any type of gainful employment due to severe psychosis and depression. (R. 173).

The opinion of a treating physician is entitled to controlling weight if supported by medically acceptable evidence and as long as it is consistent with the other evidence of record. *Macera v. Barnhart*, 305 F.Supp.2d 410, 418-19 ( D. Del. 2004); 20 C.F.R. ¶ 404.1527(d)(2). However, a physician's conclusory statement that a claimant is disabled or unable to work is not binding, and the Commissioner need not give it special weight. *Macera*, 305 F.Supp.2d at 420; 20 C.F.R. ¶ 404.1527(e)(1), (3).

Where the record shows a conflict in the medical evidence, the ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). An ALJ may reject "'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion.'" *Rieder v. Apfel*, 115 F.Supp. 2d 496, 501 (M.D. Pa. 2000) (quoting *Morales*, 225 F.3d at 316).

There is no medical evidence in the record to contradict Dr. Qureshi's opinion that the Claimant is disabled. Moreover, the psychiatrist's opinion is not the sort of routine "check the box" or "fill in the blanks" assessment form that the Third Circuit has found to be "weak evidence

7

at best" of disability. *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). Nor does his opinion contradict his treatment notes, or those of the Claimant's psychotherapists. In other words, Dr. Qureshi's opinion is consistent with the medical evidence in this case.

Indeed, the ALJ acknowledged that the medical evidence establishes that Wooten has major depression, social anxiety disorder, and borderline personality disorder. (R. 16).

The ALJ reasoned that the record did not support Dr. Qureshi's opinion because:

- the record shows no medication or treatment prior to April, 9, 2002;
- when admitted to the hospital for depression, the Claimant sprained his ankle playing basketball;
- the Claimant discontinued treatment after his discharge in April 2002;
- the Claimant had no further treatment until June, 2003;
- recent records indicate that his anger is under better control and he is planning to move in with his girlfriend; and
- in October 2003 his therapist noted "mild" anxiety with no tearfulness, and noted the Claimant's overall improvement.

(R. 18-19).

The ALJ's decision to reject Wooten's treating psychiatrist's opinion is not based upon contradictory medical evidence. Instead, the ALJ improperly substituted his own credibility judgments and speculated that the Claimant's anger and auditory hallucinations were under control. There is no medical evidence that this is so. The medical evidence of record shows that although the Claimant was improving with medication and psychotherapy, he was continuing to have problems with anger impulse and auditory hallucinations.

We conclude that the ALJ's decision that the Claimant is not disabled is not supported by substantial evidence, and we will grant his motion for summary judgment and reverse and remand.

### Conclusion

For the foregoing reasons we conclude that the ALJ's determination that Christopher Wooten is not disabled is not supported by substantial evidence, and we will reverse and remand

8

for further development of the record and a new determination of disability. [1]

An appropriate Order follows.

_August 21, 2006_
Date

_Maurice B. Cohill, Jr._
Maurice B. Cohill, Jr.
Senior United States District Judge

---

[1] The record shows that the Claimant failed to appear for a consultative mental examination scheduled for March 2003, before his application for benefits was initially denied. (R. 114-17). The ALJ did not address this fact in his opinion, and it does not form the basis for his decision to deny benefits. Nor have we considered it in reaching our decision. However, we are remanding for further development of the record. Should a new consultative examination be scheduled, the Claimant would be well advised to cooperate.